THIS case came on upon a motion made on behalf of Mr. Gibson, to set aside the reports made by the ac-x counfcants to whom the Court had referred the accounts ^ie above cases, and to refer the said accounts to the master or to other accountants with certain directions and instructions. It was agx’eed by the parties under ^10 direction of the Court to coniine themselves at present to the sixth ground stated in the notice, to wit, “ That there is reason to believe that the said .account-mat^e their reports without proper investigation, as of them lias since acknowledged that he did not investigate the accounts, but signed the report as a mere matter of form.” To which it was added verbally, and ... . , . made the principal ground in the argument, that Mr. *585 Gibson bad not bad an opportunity of putting in his exceptions to what was called the third report of the arbitrators.
The first objection has been completely removed by the explanations given by Mr. O’Hear, one of the accountants. He states that he had examined with and attention all the accounts and books of account, cept those which related to the Liverpool transactions ; and that with respect to these Mr. Tartt and Mr. Duf-fas had undertaken the minute examination of them, and if they differed, he was then to be called in to between them ; but they agreeing, there was no sity for his investigating them. There is nothing proper in this. In most cases the umpire performs this very duty, and examines and decides only when the-bitrators differ in opinion. If Mr. O’XIear had gone over the accounts and had differed from his colleagues, it could not have altered the case. How can his acquiescence and concurrence in the result of their known laborious examination, produce the effect of their act ? I am entirely satisfied on this point.
The other ground, though taken verbally at the argument, was most urged and most relied on. To understand it fully, we must resort to a history of the transactions. The disputes between these parties related to accounts. On a reference of these accounts, it was agreed between the parties that it would be proper to appoint accountants, who should stand in the place of the master, and who should examine and report upon them.
The appointment accordingly took place by order of the Court; and on the 16th of February, 1810, all three of the referrees who had been named by the parties, joined in a report. To this report both parties put in exceptions ; which exceptions were deliberately examined and decided upon, as appears by the report of two of the referrees on the 5th of March, 1810. It appears further that on the 10th of March, 1810, the Court did on the motion and with the consent of the solicitors of the respective parties, ¡order and direct that the report made *586 by two of the referrees on the exceptions of the parties to their first report should be set aside ; and that the parties respectively should be at liberty to renew their ex-cePtions, and state such others as they should see fit; ■ and that the order of inference should be extended to the last day of May then ensuing. On the 22d of May, 1810, the three referrees made a third report, grounded on the exceptions which had been previously before them, and made their final award. The motion now before the Court is to get rid of all the references, reports, ■exceptions, and reports upon the exceptions, in order to have a new reference to the master himself, or to other accounts; one of those formerly employed having departed the state; and another being very sick and infirm, and the third not acceptable to one of the parties.-
It was insisted as a preliminary, that the referrees did not stand on the footing of arbitrators, but as substitutes for the master, whose reports arc more under the revision and control of the Court. This certainly is correct ; and I agree to the law cited from Dickens’s jRep. that if the Court sees reason to be dissatisfied with the master’s report, it may refer it back to the master to be reviewed $ although the general rule is, not to admit of exceptions after the report is made and no exceptions filed to it. If therefore there be substantial ground to be dissatisfied with the report, I shall not hesitate to send it back to be reviewed. In the present case, however, the dissatisfaction cannot be extended to the merits of the report; for this motion, restricted as it is, goes only to the conduct of the referrees, in not giving, as is alleged, an opportunity to Mr. Gibson to put in his exceptions. It is not pretended that formal notice was given to either of the parties to put in their exceptions and to attend the referrees ; and upon examination of the state of the facts, it does not seem to' me to have been necessary. •For the order of the Court of the 10th of March, 1810, did not set aside the original report of the referrees, but merely the report on the exceptions of the parties ; and it authorised the parties to, renew the old exceptions, *587 and to put in new ones, and directed a report to be made on or before the 31st of May: It was not therefore for the referrees to direct the parties when to put in their exceptions. The master after he makes a report, leaves it wholly to the discretion of the parties to put in exceptions, and their non-performance of that act is always-understood to be an acquiescence in the report. In this case the Court had enlarged the time from the 10th of March to the 31st of Slay, to enable the parties to put in exceptions. Down to the 22d of May, no exceptions were put in; the referrees had a right to presume that no new ones were intended to be brought forward $, and therefore lest the time should elapse, they took into consideration the old exceptions of both parties, considered them, overruled some and sustained others; and no new exceptions -were fded within the limited time. I can see nothing incorrect in this conduct, so far as we have gone. But it is alleged that the referrees were bound to have given notice to the parties of the time and place of their meetings to consider the exceptions, and that not having done so, their report ought not to be supported. There are two answers which I think are satisfactory to this objection. The referrees were not framing an original report; but were examining the old exceptions, which had been antecedently before them, and doubtless much discussed ; and a formal notice does not seem to have been necessary, more especially when it is in proof from the affidavits, that if the parties had not formal notice, they had knowledge that the referrees were meeting frequently on the subject 5 and Mr. Gibson was even present at some of those meetings. He indeed alleges that he was there accidentally, and on other business; but whatever was the cause of his going to the place of meeting, it is positively affirmed on the oath of a disinterested witness that Mr. Gibson asked the referrees how they were going on with the business, and the referrees asked him various questions respecting the subjects under discussion. When wc consider this, and reflect that Mr. Gibson never did put in any *588 exceptions under the order of Court after the 10th of March, as he was bound to do without notice, if he intended any ; and that Mr. Tartt, one of the referrees, was ^IC particular friend of Mr. Gibson, and lodged with him, and was an excellent accountant, and intimately acquainted with the accounts and affairs in ques.tion ; and that he attended the meetings regularly, and advocated the interests of Mr. Gibson as far as a sense of justice would permit, the impression on the mind is irresistible that Mr. Gibson was fully informed of what was passing, and ought to have attended more directly to his interest, if he had thought it necessary. It is further insisted on the part of Mr. Gibson, that no notice was given him previously to the third report being given, in to the Court, which notice he was entitled to, that he might have put in exceptions to the report- This objection seems to be grounded upon the idea that whenever exceptions have been put in, and the master has decided on them, that he is bound to furnish a copy of his report on the exceptions, or give notice to the parties that they may prepare exceptions to it. But this surely is not the course of the Court. Upon the original report, it is the coarse, and properly so, to give notice, in order to elicit the objections and exceptions of the parties. When these are made, and the master decides on them, it is neither necessary nor proper to give notice to the parties before he lays them before the Court; for it would be •(Useless, not to say idle, to travel in the same circle without end, in the manner proposed. The exceptions being sustained or overruled, become the subject of discussion before the Court, which decides finally on them. This was the case now-under consideration. The original report had been made, exceptions had been put in, some of which were sustained, and some were overruled. The Court had by consent of both parties, sent back the report on the exceptions to the referrees. They considered them, and made a new report on the old exceptions, (no new exceptions being filed,) and this report would carry all the disputed points made known before *589 the Court. It appears to me all this was in the proper conree. But it is insisted that Mr. Gibson believed that as he was not formally noticed to attend the meeting the referrees, he could at any time come in and set aside their proceedings $ and that if he is prevented from doing so, he will have lost his opportunity, and be much injured. I am sorry for this allegation $ because it would surely have been more proper for Mr. G. to have requested the referrees to be more formal in their proceedings when he thought he saw them proceeding irregularly, than to have Iain by and furnished a ground lor the suggestion, (which however I am unwilling to believe,) that he lay by designedly, and with a view to set-aside the proceedings and delay the determination of the cause. Be that as it may, I cannot set aside tho reports on his allegation of misapprehension, to the lasting delay and deep injury of the other party. If he should be injured, it will be his own fault; for he had access to better advice. But he cannot be injured ; for if on the coming on of the cause, it should appear to the Court tliat the referrees have not done justice, and that there ought to be a reference back to the master or accountants to get at the merits of the case, doubtless such a course will be pursued. But I wish to be understood fully. It must be a very strong and even a flagrant case, which will induce the Court, after a lapse of three years and a most laborious examination of accounts, by men eminently competent to the task, and above reproach, to set aside the result of those examinations. More especially when the referree nominated by the complaining party concurred in and signed, the first report, and the last decisive report upon the exceptions $ and more especially when the absence of that referree, and the infirmities of another might involve the necessity of an entire new reference, and thus open the whole subject of litigation, to travel the same round of investigation and delay. The time prescribed for the duration of causes has nearly elapsed in this case, and. though by a late law the Courtis authorised to extend *590 the time, on good cause shewn, it is a confidence in the. discretion of the Court which must be exercised cautiously, so as to give effect to the maxim which considers the public interest, as well as that of individuals best consulted by the speedy decision of causes. Upon the whole I must refuse to grant this motion.